UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CATHLEEN SUSAN VAN BUSKIRK | ) | Case No. 14-21678 MER |
| XXX-XX-1129 | ) | Chapter 7 |
| | ) | |
| *Debtor.* | ) | |
| DANIEL A. HEPNER, Chapter 7 Trustee | ) | |
| | ) | |
| *Plaintiff,* | ) | Adversary Proceeding No. |
| | ) | |
| vs. | ) | |
| | ) | |
| CATHLEEN SUSAN VAN BUSKIRK | ) | |
| | ) | |
| *Defendant.* | ) | |

## COMPLAINT TO REVOKE DISCHARGE

Daniel A. Hepner, Chapter 7 trustee ("*Trustee*") of the bankruptcy estate of Cathleen Susan Van Buskirk ("*Debtor*") hereby files this Complaint to Revoke Discharge pursuant to 11 U.S.C. §§ 727(e) and 727(d)(1) and (2). In support hereof, Trustee states as follows:

### JURISDICTION

1. This Court has original jurisdiction of these matters pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), General Procedure Order No. 1984-3 and 28 U.S.C. § 157(b)(1) in that they arise under Title 11 of the United States Code.

2. An action to revoke Debtor's discharge is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

### GENERAL ALLEGATIONS

4. Debtor filed a voluntary Chapter 7 bankruptcy petition on August 25, 2014 (the "*Petition Date*"). Debtor filed her Schedule of Assets and Liabilities and Statement of Financial Affairs with her Voluntary Petition under oath on the Petition Date.

5. Trustee is the duly appointed and acting Chapter 7 trustee of the bankruptcy estate.

6. Trustee conducted the original Section 341 meeting of creditors on September 19, 2014. The meeting of creditors was continued to November 7, 2014 and then to December 19,

2014. The meeting of creditors was concluded on December 19, 2014.

7. The Debtor was granted a Discharge on January 5, 2015.

8. Upon information and belief, prior to her bankruptcy filing, Debtor asked friends, Andria and Burton Lewis, to store some valuables ("*Valuables*") for safekeeping. Andria and Burton Lewis believed the Debtor wished to remove the Valuables from her home because repairs were being made to her home. A list of the Valuables is included on **Exhibit A** attached hereto.

9. At the time Andria and Burton Lewis took possession of the Valuables they were advised by Debtor that the Valuables contained cash. Andria Lewis asked to borrow $2,000 of the cash, to which Debtor agreed. Andria Lewis believes the $2,000 belongs to the bankruptcy estate and has agreed to repay the $2,000 to Trustee.

10. Andria and Burton Lewis agreed to store the remaining Valuables for Debtor and placed the remaining Valuables into a safe deposit box that Andria and Burton Lewis had rented at their local bank.

11. In November 2015, Debtor and Andria Lewis met for brunch, at which timeDebtor requested that Andria Lewis return $5,000 of cash included in the Valuables to her. It was at this meeting that Andria Lewis realized that the Valuables may be property of Debtor's bankruptcy estate.

12. Thereafter, Andria and Burton Lewis, through counsel, contacted Trustee to advise him of the Valuables in their safe deposit box. After meeting with Andria and Burton Lewis, Trustee believes the Valuables belong to Debtor's bankruptcy estate, and Andria and Burton Lewis agree.

13. Neuro Logical, LLC, is a Delaware limited liability company, formed on November 29, 2012 ("*Neuro Logical*"). Trustee is informed and believes that Debtor was originally the sole member of Neuro Logical.

14. On February 4, 2013, a Certificate of Amendment was filed with the State of Delaware Secretary of State's office, listing Cindy Venderwerf, Debtor's sister, as the member of Neuro Logical.

15. Trustee is informed and believes that all revenue generated by Neuro Logical is from medical services provided by Debtor or practioners used by Debtor in her medical practice. Upon information and belief no Neuro Logical revenue is generated from Ms. Venderwerf's services.

16. On December 26, 2013, Debtor signed a check in the amount of $170,000, Check No. 5023, issued from the Neuro Logical bank account payable to the Order of "Cathleen Van Buskirk" (the "*$170,000 Check*").

17. Multiple Ventures, LLC is a Delaware limited liability company formed on January 28, 2014 ("*Delaware Multiple Ventures*"). Debtor's office manager, Janet Dechant, was listed as the sole member of the Delaware Multiple Ventures.

18. On January 29, 2014, a Statement of Foreign Entity Authority was filed with the Colorado Secretary of State by Janet Dechant on behalf of the Delaware Multiple Ventures.

19. Debtor endorsed the $170,000 Check on the back and wrote "Pay to the Order of Multiple Ventures, LLC for deposit to XXXXX7283". The $170,000 Check cleared the Neuro Logical bank account on February 14, 2014. A copy of the check is attached hereto as **Exhibit B**.

20. Multiple Ventures in turn used the $170,000 to make a loan to Fetter Logic, Inc. ("*Fetter Logic*"). Attached hereto as **Exhibit C** is a copy of a Promissory Note in the principal amount of $170,000 dated February 24, 2014 to be issued by Fetter Logic in favor of Multiple Ventures (the "*Fetter Logic Note*"). David Fetter is listed as the CEO of Fetter Logic. Mr. Fetter's signature is not on the Fetter Logic Note but Janet Dechant signed the Fetter Logic Note on behalf of Multiple Ventures on February 24, 2014.

21. Attached hereto as **Exhibit D** is a copy of a letter from Terry Bartz, Chief Operating Officer of Fetter Logic, Inc. indicating that the loan from Multiple Ventures was dated September 30, 2014 for the principal sum of $179,096.43.

22. On May 19, 2015, Golden Vision, LLC ("*Golden Vision*") a Delaware limited liability company was formed listing Cindy Vanderwerf, Debtor's sister as the initial member.

23. On June 3, 2015, Janet Dechant on behalf of Multiple Ventures assigned the Fetter Logic Note to Golden Vision, LLC (the "*Assignment*"). A copy of the Assignment is attached hereto as **Exhibit E**. The Assignment stated that the Fetter Logic Note is "hereby endorsed in its entirety from Multiple Ventures, LLC to Golden Vision, LLC" (the "*Assignment*"). Cindy Vanderwerf's signature is on the Assignment. Trustee is informed and believes that the Delaware Multiple Ventures received no consideration for the Assignment.

24. Trustee is informed and believes that the Fetter Logic Note plus accrued interest in the amount of $261,707.19 was paid to Golden Vision on or before September 30, 2015.

25. At all times relevant, Debtor was in control of Neuro Logical.

26. At all times relevant, Debtor was in control of the $170,000 paid from Neuro Logical to Debtor and subsequently transferred to Delaware Multiple Ventures.

27. At all times relevant, Debtor was in control of the loan made by Multiple Ventures to Fetter Logic.

28. Upon information and belief, at all times relevant, Debtor was in control of Golden Vision.

## CLAIM FOR RELIEF

(Revocation of Discharge Under 11 U.S.C. § 727(e) and 727(d)(1) and (d)(2)

29. Trustee incorporates paragraphs 1 through 26 as though fully set forth herein.

30. Pursuant to 11 U.S.C. § 541, upon Debtor's bankruptcy filing, all non-exempt, unencumbered personal property became property of the estate to be administered by Trustee.

31. Debtor did not disclose the Valuables on her Bankruptcy Schedules. By failing to disclose the Valuables, Debtor has concealed assets from the bankruptcy estate.

32. After the Petition Date, Debtor took steps to obtain possession of $5,000 in cash from the Valuables held in the safe deposit box.

33. Debtor did not list on her Statement of Financial Affairs that she had been a member of Neuro Logical during the six years prior.

34. Debtor did not list on her Statement of Financial Affairs that she transferred her membership interest in Neuro Logical to her sister, Cindy Vanderwerf, as evidenced by the Certificate of Amendment filed on February 4, 2013 with Delaware Secretary of State.

35. Debtor did not disclose the $170,000 Check paid to her from Neuro Logical in December of 2013.

36. Debtor did not disclose that she was a signatory on the Neuro Logical bank account.

37. Debtor did not disclose that she transferred the $170,000 to Multiple Ventures in February of 2014 by endorsing the check to Multiple Ventures.

38. Debtor did not disclose the Fetter Logic Note or loan to Fetter Logic.

39. Debtor did not disclose the formation of Golden Vision, LLC in May of 2015 listing her sister as the sole member.

40. Debtor did not disclose the assignment of the Fetter Logic Note by Multiple Ventures to Golden Vision.

41. Debtor did not disclose the repayment of the Fetter Logic Note to Golden Vision.

42. By failing to disclose the above assets and transfers, Debtor obtained her discharge through fraud. Trustee did not become aware of the fraud until being contacted by Janet Dechant and the Lewis'.

43. Trustee is informed and believes that the Fetter Logic Note is property of the

4

bankruptcy estate or Trustee may recover such property for the benefit of the bankruptcy estate. To the extent Debtor took possession of the Fetter Logic Note or any proceeds therefrom, Debtor knowingly and fraudulently failed to report the property or entitlement to the property, or deliver or surrender such property to Trustee.

44. Upon information and belief, there may be other assets and transactions that Debtor failed to disclose. Trustee reserves the right to amend the complaint to add such other claims.

45. Accordingly, Trustee requests that this Court revoke the Debtor's discharge pursuant to Bankruptcy Code §§ 727(e), (d)(1) and (d)(2).

**WHEREFORE**, Trustee requests that this Court enter an Order revoking Debtor's discharge as set forth above and grant such other and further relief as the Court deems just and proper.

Date: January 4, 2016.                    Respectfully submitted,

*/s/ Joli A. Lofstedt*
Joli A. Lofstedt, Esq. #21946
950 Spruce Street, Suite 1C
Louisville, CO 80027
Telephone: (303) 661-9292
Facsimile: (303) 661-9555
joli@crlpc.com

*Counsel to Daniel A. Hepner, Trustee*

EXHIBIT A

# Inventory of Safe Deposit Box

| Item | Contents |
|---|---|
| Wells Fargo envelope with circled number 7 | Forty (40) United States one hundred-dollar bills |
| Blank white envelope with circled number 2.5 | Twenty-five (25) United States one-hundred dollar bills |
| Guaranty Bank and Trust Company envelope with circled number 5 | Fifty (50) United States one-hundred dollar bills |
| Wells Fargo envelope with circled number 3 | Thirty (30) United States one-hundred dollar bills |
| Wells Fargo envelope with circled number 5 | Fifty (50) United States one-hundred dollar bills |
| Wells Fargo envelope with circled number 6 | Sixty (60) United States one-hundred dollar bills |
| Guaranty Bank and Trust Company envelope with circled number 3 | Thirty (30) United States one-hundred dollar bills |
| Wells Fargo envelope with circled number 3.5 | Thirty-five (35) United States one-hundred dollar bills |
| Guaranty Bank and Trust Company envelope with circled number 5 | Fifty (50) United States one-hundred dollar bills |
| Key Bank envelope with circled number 3 | Thirty (30) United States one-hundred dollar bills |
| Wells Fargo envelope with circled number 6 | Sixty (60) United States one-hundred dollar bills |
| Boulder Valley Credit Union envelope | Thirty-two (32) 20 pound sterling bills – Bank of England |
| | Nine (9) 50 Euro bills |
| | One (1) Canadian ten dollar bill |
| | One (1) Central Bank of Belize ten dollar bill |
| | One (1) Central Bank of Belize five dollar bill |
| | One (1) 5 pound sterling bill – Bank of England |

1

# Inventory of Safe Deposit Box

| Item |
|---|
| Black Alexander Wang bag |
| Black Ben Bridge handbag |
| American Institute of Gemological Research, Inc. Appraisal dated May 22, 2013, pertaining to 18KT white gold lady's cast brilliant cut diamond solitaire engagement ring with a pinch shank with a bright polish finish [Value: $45,731.18] |
| Anspach's Jewelry appraisal dated July 26, 2013, pertaining to one loose 2.10 carat, round, brilliant cut diamond [Value: $29,500 (insurance); $17,900 (estate)] |
| Anspach's Jewelry job ticket/card, pertaining to 2.09 carat diamond |
| Blue wrapping paper [empty] |
| Gemological Institute of America Diamond Grading Report dated December 11, 2013, pertaining to 2.09 carat diamond |
| Aspach's Jewelry appraisal dated December 16, 2013, pertaining to one loose 2.09 carat, round, brilliant cut diamond [Value: $33,400 (insurance) $17,900 (estate)] |
| Yellow sticky note pertaining to 2.10 carat diamond |
| Centennial Precious Metals, Inc. Invoice |
| 10 plastic containers (9 sealed and 1 unsealed) each containing 20 1oz fine silver dollars – caps says "Treasury – United States Mint" with emblem |
| 20 British Sovereign King UNC |
| 20 Swiss Franc UNC |
| Diamond Ring |

2

**EXHIBIT B**

# JPMorgan Chase & Co.

| | | | |
|---|---|---|---|
| Post date: | 20140214 | Account: | |
| Amount: | $ 170000.00 | Check Number: | 5023 |

Check #5023
Neuro Logical, LLC
Date: 12/26/2013
Pay to the order of: Cathleen Van Buskirk
$ **170,000.00
One Hundred Seventy Thousand and 00/100 DOLLARS
Cathleen S Van Buskirk
90 Cessna Drive
Erie, CO 80516
Signed: R. Van Buskirk M.D.

EXHIBIT C

# PROMISSORY NOTE

$170,000.00                                                                February 24, 2014

FOR VALUE RECEIVED, Fetter Logic, Inc (the "Maker"), promises to pay to the order of Multiple Ventures, LLC (the "Holder") the principal amount of $ 170,000.00 (One Hundred Seventy Thousand and Zero Cents) together with a fee in the amount of $7,083.33 (Seven Thousand Eighty Three Dollars and Thirty Three). The Maker shall pay the entire balance of this note's principal plus the fee (totaling $177,083.33) on the Maturity Date. The "Maturity Date" shall be the earlier to occur of (a) receipt of funds by Maker from its account debtor National Financial (Fidelity), for invoice #12901 for $178,000 or (b) March 21, 2014. In the event payment is not made on the Maturity Date, this note shall be secured by any and all assets of Fetter Logic, Inc.

All payments hereunder shall be made in the lawful currency of the United States of America. This Note may be prepaid in whole or in part at any time or times without premium or penalty.

No renewal or extension of this Note, no release of the Maker, and no delay in enforcement of this Note or in exercising any right or power hereunder, shall affect the liability of the Maker. Whenever used herein, the word "Maker" shall be deemed to include its respective successors and assigns. This Note shall be governed by and construed under and in accordance with the laws of the State of Colorado (but not including the choice of law rules thereof).

IN WITNESS WHEREOF, the undersigned has duly executed this Note, or have caused this Note to be duly executed on its behalf, as of the day and year set forth above.

**Fetter Logic, Inc**

By:
David Fetter
CEO
Fetter Logic, Inc

**Multiple Ventures, LLC**

By: *Jan Dechant  2/24/14*
Jan Dechant
**Member, Multiple Ventures, LLC**

EXHIBIT D

FETTER LOGIC, INC.

September 25, 2015

**Sent via Email**
Cindy Vanderwerf
goldenvision@yahoo.com

Re:     Promissory Note

Dear Ms. Vanderwerf:

Reference is hereby made to that certain Promissory Note issued by Fetter Logic, Inc., a Colorado corporation ("**Maker**"), to Multiple Ventures ("**Holder**"), dated as of September 30, 2014 (the "**Note**") for the principal sum of $179,096.43 (the "**Loan Amount**"). On June 3, 2015, the Note was assigned to Golden Vision, LLC.

This letter agreement confirms that (i) as of September 30, 2015, the aggregate amount of principal and interest outstanding on the Note was $261,707.19 (the "**Final Payment**"), (ii) Maker will pay to Holder the Final Payment no later than September 30, 2015, which date shall be the Closing Date (as defined in the Purchase Agreement) of the transactions contemplated by that certain Asset Purchase Agreement dated as of September 10, 2015 by and among Fidelity Global Brokerage Group, Inc., Maker, the persons listed on Annex I thereto and Colvin Ventures, LLC in its capacity as the Seller's Representative (the "**Purchase Agreement**"), subject to the terms and conditions of the Note, (iii) except for the Final Payment, Holder hereby forgives Maker's obligation to repay the outstanding principal due under the Note together with all interest accrued and any other unpaid amounts thereon, and releases Maker from Maker's obligation to repay said Loan Amount, (iv) immediately upon Maker's payment of the Final Payment, the Note shall be automatically terminated, cancelled and of no further force and effect, which termination shall include without limitation any provisions thereof that purport to survive termination, expressly or otherwise, (iv) except as expressly set forth herein, Maker shall have no further obligations, duties or responsibilities in connection with the Note to Holder, including without limitation any obligations under the Note that expressly survive termination, and (v) immediately upon Maker's payment of the Final Payment, any and all security interests, liens, pledges, charges and other encumbrances (the "**Liens**") in favor of Holder against Maker or any of Maker's property shall be automatically released and discharged with no further action. The Maker or its agent may file UCC termination statements in connection with any existing Liens. The Holder will promptly deliver to the Maker or its agent any collateral in its possession and, at the reasonable request of the Maker, the Holder shall execute such additional documents, instruments and other writings, and take such other action, as the Holder may reasonably require to carry out the terms of this letter agreement.

Holder warrants to Maker that Holder owns the Note free and clear of all mortgages, liens, pledges, charges, title claims, security interests or encumbrances of any kind or character and Holder has not transferred any interest in or any rights under the Note or to any person.

Each of Holder and Maker shall be solely responsible for each party's own taxes, fees and costs associated with this letter agreement. Holder and Maker each undertake to execute and deliver

such further documents and do such further acts and things as may from time to time be necessary to give effect to the foregoing.

This letter agreement may be executed in multiple counterparts and by facsimile or electronic signature, each of which shall be deemed an original and all of which together shall constitute one instrument. This letter agreement shall be governed by and construed in accordance with the laws of the State of Colorado, without regard to conflict of law principles thereof.

[Signature Page Follows]

Each of the undersigned hereby agrees to the foregoing, effective as the date first written above.

Sincerely,

**FETTER LOGIC, INC.**

By: _____
Terry Bartz, Chief Operating Officer

Accepted and agreed to:

**GOLDEN VISION, LLC**

_____

By: _____

Name: _____

Title: _____

EXHIBIT E

June 3, 2015

This document is hereby written to record the assignment of the Promissory Note dated February 24, 2014, between Fetter Logic, Inc. and Multiple Ventures, LLC.

This Promissory Note is hereby endorsed in its entirety from Multiple Ventures, LLC to Golden Vision, LLC, in the amount of $170,000 plus interest to date.

All payments shall be made directly from Fetter Logic, Inc. to Golden Vision, LLC.

This Promissory Note remains secured by any and all assets of Fetter Logic, Inc.


_____  Date 6-3-15
Jan Dechant for Multiple Ventures, LLC


_____  Date 6/3/15
Cindy Vanderwerf for Golden Vision, LLC