IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| CATHLEEN SUSAN VAN BUSKIRK ) | Case No. 14-21678 MER |
| SSN: XXX-XX-1129 ) | Chapter 7 |
| ) | |
|     *Debtor.* ) | |

## MOTION TO APPROVE SETTLEMENT AGREEMENT

Daniel A. Hepner, Chapter 7 trustee ("*Trustee*") of the bankruptcy estate of Cathleen Susan Van Buskirk ("*Debtor*"), hereby requests that the Court approve a Settlement Agreement (the "*Settlement Agreement*") between Trustee, Debtor and the Van Buskirk Parties (as defined below). In support hereof, Trustee states as follows:

1.  Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on August 25, 2014 (the "*Petition Date*"). Debtor is a medical doctor.

2.  Trustee is the duly appointed and acting Chapter 7 trustee of Debtor's bankruptcy estate. Upon commencement of Debtor's bankruptcy, Trustee began administering the case, including reviewing Debtor's bankruptcy schedules and investigating Debtor's financial affairs. Debtor listed assets on Schedules A and B of her Bankruptcy Schedules which were filed with the Bankruptcy Court and on the Trustee Information Sheet submitted to Trustee at the Meeting of Creditors. Certain of the assets listed are either partially or completely non-exempt and subject to administration by the Trustee (hereinafter the "*Non-Exempt Assets*"). The Non-Exempt Assets include funds in scheduled bank accounts, wages owed to the Debtor on the Petition Date, as well as the Debtor's interests in certain limited liability companies and corporations listed on the Schedule B.

3.  On December 23, 2014, Trustee filed a Notice of Possible Dividends in Debtor's bankruptcy case. As of the date of this Motion, two claims have been filed in Debtor's bankruptcy case. Claim No. 1 was filed by First National Bank in the amount of $121,915.02, and is fully secured by a second deed of trust in Debtor's primary residence. Trustee will not administer Debtor's primary residence and because the claim is fully secured, Claim No. 1 will receive no distributions from the bankruptcy estate.

4.  Claim No. 2 was filed as a general unsecured claim by LPP Mortgage LTD ("*LPP*") in the amount of $1,465,315.22. The claim was for amounts owing on a loan made by Charter Bank to Debtor to acquire and build residences on two subdivided lots in Santa Fe, New Mexico. The loan was guaranteed by trusts created by and related entities of the Debtor (the "*Guarantors*"). Prior to the Petition Date, Charter Bank was acquired by Beal Bank, SSB ("*Beal Bank*") who in turn transferred the loan to LPP. On the Petition Date, Debtor, Beal Bank, LPP and the Guarantors were involved in litigation pending in New Mexico regarding the loan (the "*New Mexico Litigation*"). The Debtor and the Guarantors had asserted counterclaims against

Beal Bank and LPP in the New Mexico Litigation. During the bankruptcy proceedings, Trustee entered into a settlement agreement with LPP, Beal Bank, Debtor and the Guarantors which resolved the New Mexico Litigation and provided that Claim No. 2 would be allowed in the amount of $830,427.40 as a general unsecured claim. An order approving the settlement agreement with LPP and Beal Bank was entered on October 5, 2015. Claim No. 2 is the only timely filed unsecured claim in this case.

5.  On January 5, 2015, the Debtor received a discharge.

6.  Subsequently, the Trustee became aware of assets in a safe deposit box which were alleged to belong to the Debtor, as well as certain pre-petition and post-petition transactions which appeared to involve funds belonging to the Debtor or persons or entities over which the Debtor exercised dominion and control.

7.  Trustee's investigation indicated that grounds may exist to seek revocation of the discharge granted to Debtor and on January 4, 2016, Trustee filed a Complaint to Revoke Debtor's Discharge pursuant to 11 U.S.C. § 727(e) and 727(d)(1) and (2) (the "*Adversary Proceeding*").

8.  Subsequent to the filing of the Adversary Proceeding, the assets listed on **Exhibit A** attached to the Settlement Agreement were recovered from a safe deposit box at a local bank (collectively the "*Safe Deposit Box Assets*").

9.  Since filing the Adversary Proceeding, Trustee has collected the sum of $309,707.19 (the *"Collected Cash Amount"*) and certain other assets (coins, foreign currency and a diamond ring) that have yet to be liquidated. The Collected Cash Amount includes $46,000 in U.S. Currency that was in the safe deposit box and $2,000 from repayment of a personal loan made by Debtor to a friend.

10. The Collected Cash Amount also includes $261,707.19 from repayment of a loan made to Fetter Logic, Inc. ("*Fetter Logic*") prior to the Petition Date. The Trustee asserted that the funds from the payoff of the Fetter Logic loan were subject to turnover to the bankruptcy estate because the Fetter Logic loan was made using funds generated from services provided by the Debtor and by persons or entities controlled by the Debtor.

11. After discovery and further investigations, Trustee identified certain transfers by Debtor that may potentially be avoided and recovered for the benefit of the bankruptcy estate under 11 U.S.C. § § 544, 547, 548 and/or 549 against the Debtor or the persons or entities listed below (collectively the "*Van Buskirk Parties*"):

    a.    Surgical Care, LLC, a Colorado limited liability company;
    b.    Alpine Spine Center, P.C., a Colorado corporation;
    c.    Neuro Logical, LLC, a Delaware limited liability company;
    d.    Golden Vision, LLC, a Delaware limited liability company;
    e.    CSVB Design, LLC, a Colorado limited liability company;
    f.    CSVB Group, LLC, a Delaware limited liability company;

  g. Cynthia Vanderwerf, an individual and resident of Wisconsin and Debtor's sister;
  h. Alpine Spine Center, P.C. Defined Benefit Pension Plan;
  i. Alpine Spine Center 401(k) Plan; and
  j. Any other entity in which Debtor and Vanderwerf have an equity interest and in which Van Buskirk and/or Vanderwerf are an officer or director.

12. After ongoing discussions with Debtor's counsel, on August 16, 2016, Trustee entered into a Tolling Agreement with Debtor and the Van Buskirk Parties relating to any claims that the Trustee may have under 11 U.S.C. §§ 544, 547, 548 and/or 549 against Debtor or any of the Van Buskirk Parties. Further, in an effort to avoid additional costs and delay associated with continued litigation, Trustee, Debtor and the Van Buskirk Parties have entered a Settlement Agreement that resolves the Adversary Proceeding, any claims that the bankruptcy estate may have to the Debtor's Non-Exempt Assets, and any claims that the Trustee may have against the Debtor and the Van Buskirk Parties under 11 U.S.C. §§542, 544, 547, 548 and/or 549. A copy of the Settlement Agreement is attached hereto as **Exhibit 1**.

13. Pursuant to the Settlement Agreement, no later than November 14, 2016, Debtor shall pay $540,000 (the "*Additional Cash Payment*") to her legal counsel, Joel Laufer LLC, to be held in trust and thereafter delivered to Trustee immediately upon the Order by the Bankruptcy Court approving the Settlement Agreement becoming a final order.

14. The Settlement Agreement also contains a provision whereby the Debtor and the Van Buskirk Parties represent and warrant that they have properly reported on tax returns for periods prior to the Petition Date or will properly report on their post-petition income tax returns, the Collected Cash Amount and/or the Additional Cash Payment and any tax liability for such amounts has been or will be paid by Debtor and/or the Van Buskirk Parties to the Federal and/or State taxing authorities. Debtor and the Van Buskirk Parties have further agreed to indemnify Trustee for any tax obligation asserted against the bankruptcy estate for Debtor's or the Van Buskirk Parties' failure to properly report such amounts on their Federal and State tax returns.

15. Trustee shall retain and have the right to liquidate, subject to further Court approval, any of the remaining Safe Deposit Box Property that has value, as determined in Trustee's sole discretion, and the proceeds therefrom shall be retained by Trustee for the benefit of the bankruptcy estate. When requested, Debtor agrees to provide the income tax basis for the Safe Deposit Box Property.

16. The Settlement Agreement provides for a mutual release of claims between the bankruptcy estate, the Debtor and the Van Buskirk Parties, including but not limited to any claims under 11 U.S.C. 542, 544, 547, 548 and/or 549 but does not release the Parties from their obligations provided in the Settlement Agreement. The Settlement Agreement is subject to Bankruptcy Court approval.

17. Debtor and/or the Van Buskirk Parties dispute the allegations made by Trustee and the Settlement Agreement is being entered into solely as a settlement of claims or potential claims, and does not represent an admission by any party of any liability (which liability is

specifically denied) with respect to the claims of the bankruptcy estate or the Trustee and/or defenses which have been or could have been asserted by the Debtor or the Van Buskirk Parties in the Adversary Proceeding or any other lawsuit or legal proceeding brought under 11 U.S.C. §§542, 544, 547, 548 or 549.

18. Trustee believes that the Settlement Agreement is fair and reasonable and in the best interests of the bankruptcy estate. After collecting the Additional Cash Amount, Trustee will have recovered $849,707.19. In addition, Trustee intends to liquidate the coins, foreign currency and diamond solitaire ring included in the Safe Deposit Box Assets. Based on these amounts, Trustee anticipates that administrative claims will be paid in full and the estate will make a substantial distribution to LPP on its unsecured claim. Based on the Trustee's investigation, the amounts to be paid under the Settlement Agreement exceed the value of the Debtor's Non-Exempt Assets and any monies that could be recovered in any avoidance and/or turnover actions initiated by the Trustee. Trustee is informed and believes that the Additional Cash Payment will be paid from Debtor's post-petition earnings and/or loans obtained by the Debtor post-petition. It is the Trustee's position that the fact that the settlement will result in the Trustee recovering in excess of $850,000 for distribution in the bankruptcy case mitigates in favor of dismissal of the Adversary Proceeding, because it provides immediate funds for distribution on the allowed unsecured claim of LPP, as opposed to LPP having to pursue collection of its claims against the Debtor in the event the Court were to revoke the Debtor's discharge. Accordingly, the Trustee believes the settlement is in the best interests of creditors and requests that the Court approve the Settlement Agreement.

**WHEREFORE**, Trustee requests that this Court enter an Order approving the Settlement Agreement and for such other and further relief as the Court deems just and proper.

Date: November 17, 2016.       Respectfully submitted,

*/s/ Joli A. Lofstedt*
Joli A. Lofstedt, Esq. #21946
Connolly, Lofstedt, Cadette & Pearce, P.C.
950 Spruce Street, Suite 1C
Louisville, Colorado 80027
Ph: 303-661-9292
Fx: 303-661-9555
joli@clcplaw.com

*Attorneys for Daniel A. Hepner, Trustee*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on this 17th day of November, 2016, a true and correct copy of the foregoing document entitled **MOTION TO APPROVE SETTLEMENT AGREEMENT, notice and proposed order** were mailed, U.S. postage prepaid, to the following:

| | |
|---|---|
| United States Trustee<br>Byron G. Rogers Federal Building<br>1961 Stout St.<br>Ste. 12-200<br>Denver, CO 80294 | Daniel A. Hepner<br>1660 Lincoln Street<br>Suite 2200<br>Denver, CO 80264 |
| Cathleen Susan Van Buskirk<br>90 Cessna Drive<br>Erie, CO 80516 | Joel Laufer<br>5290 DTC Pkwy,<br>Ste. 150<br>Englewood, CO 80111 |
| Donald D. Allen<br>Markus Williams Young & Zimmermann LLC<br>1700 Lincoln St., Suite 4550<br>Denver, Colorado 80203 | Nationstar Mortgage LLC<br>PO Box 619096<br>Dallas, TX 75261-9741 |
| Jennifer Cruseturner, Esq.<br>c/o McCarthy & Holthus, LLP<br>7700 E. Arapahoe Road, Ste. 230<br>Centennial, CO 80112 | |

*/s/ Christy Bevel*
Christy Bevel, Legal Assistant

## SETTLEMENT AGREEMENT WITH DEBTOR
## AND THE VAN BUSKIRK PARTIES

This SETTLEMENT AGREEMENT WITH DEBTOR AND THE VAN BUSKIRK PARTIES (the "*Agreement*") is entered into on this 14th day of November 2016, by and between **DANIEL A. HEPNER**, the Chapter 7 trustee ("*Trustee*") of the bankruptcy estate of Cathleen Susan Van Buskirk, Chapter 7 Case No. 14-21678 MER pending in the United States Bankruptcy Court for the District of Colorado and **CATHLEEN S. VAN BUSKIRK** aka Cathleen Susan Van Buskirk, the Chapter 7 debtor ("*Debtor*"), **SURGICAL CARE, LLC**, a Colorado limited liability company, **ALPINE SPINE CENTER, P.C.**, a Colorado corporation, **NEURO LOGICAL, LLC**, a Delaware limited liability company, **GOLDEN VISION, LLC**, a Delaware limited liability company, **CSVB DESIGN, LLC**, a Colorado limited liability company, **CSVB GROUP, LLC**, a Delaware limited liability company, **CYNTHIA VANDERWERF**, an individual and resident of Wisconsin, the **ALPINE SPINE CENTER, P.C. DEFINED BENEFIT PENSION PLAN** and the **ALPINE SPINE CENTER 401(k) PLAN** and any other entity in which the Debtor and/or Cynthia Vanderwerf ("*Vanderwerf*") have an equity interest and in which the Debtor and/or Vanderwerf are an officer or director (the "*Unidentified Companies*"). Surgical Care, LLC; Alpine Spine Center, P.C.; Neuro Logical, LLC; Golden Vision, LLC; CSVB Design, LLC; CSVB Group, LLC; Cynthia Vanderwerf; the Alpine Spine Center, P.C. Defined Benefit Pension Plan, the Alpine Spine Center 401(k) Plan and the Unidentified Companies are referred to in this Agreement as the "*Van Buskirk Parties*". Trustee, Debtor, and the Van Buskirk Parties are collectively referred to as "Parties."

## RECITALS

A. Debtor filed an individual voluntary petition under Chapter 7 of the Bankruptcy Code on August 25, 2014 (the "*Petition Date*"). Trustee is the duly appointed and acting Chapter 7 trustee of Debtor's bankruptcy estate.

B. Upon commencement of Debtor's bankruptcy, Trustee began administering the case, including reviewing Debtor's bankruptcy schedules and investigating Debtor's financial affairs.

C. Debtor listed assets on Schedules A and B of her Bankruptcy Schedules which were filed with the Bankruptcy Court in her bankruptcy case and on the Trustee Information Sheet submitted to Trustee at the Meeting of Creditors. Certain of the assets listed are either partially or completely non-exempt and subject to administration by the Trustee (hereinafter the "*Non-Exempt Assets*").

D. On December 23, 2014, Trustee filed a Notice of Possible Dividends in Debtor's bankruptcy case.

E. On January 5, 2015, the Debtor received a discharge.

F. Trustee's investigation indicated that grounds may exist to seek revocation of the discharge granted to Debtor.

Exhibit 1

G. As of the date of this Agreement, two claims have been filed in Debtor's bankruptcy case, Claim No. 1 was filed as a secured claim by First National Bank in the amount of $121,915.02. Claim No. 1 is secured by a second deed of trust on Debtor's primary residence. Claim No. 2 was filed as a general unsecured claim by LPP Mortgage LTD ("*LPP*") in the amount of $1,465,315.22.

H. Prior to the Petition Date, Debtor and LPP Mortgage LTD, among others, were involved in litigation pending in New Mexico regarding the claims asserted by LPP against Debtor and counterclaims asserted by the Debtor against LPP and LPP's predecessors in interest. During the bankruptcy proceedings, Trustee entered into a settlement agreement with LPP pursuant to which Trustee and LPP agreed that Claim No. 2 would be allowed in the amount of $830,427.40 as a general unsecured claim. An order approving Trustee's settlement agreement with LPP was entered on October 5, 2015.

I. On January 4, 2016, Trustee filed a Complaint to Revoke Debtor's Discharge pursuant to 11 U.S.C. § 727(e) and 727(d)(1) and (2) (the "*Adversary Proceeding*").

J. On August 16, 2016, Trustee entered into a Tolling Agreement with Debtor and the Van Buskirk Parties relating to any claims that the Trustee may have under 11 U.S.C. §§ 544, 547, 548 and/or 549 against the Debtor or any of the Van Buskirk Parties.

K. To date, the Trustee has collected the sum of $309,707.19 (*the "Collected Amount"*), which monies represent estate assets recovered by the Trustee.

L. After discussions with Debtor's counsel, and in an effort to avoid additional costs and delay associated with possible litigation, the Parties have entered this Agreement to resolve the Adversary Proceeding, any claims that the Trustee may have against the Debtor and the Van Buskirk Parties under 11 U.S.C. §§ 542, 544, 547, 548 and/or 549, and any claims of the bankruptcy estate to the Non-Exempt Assets.

## AGREEMENT

**NOW THEREFORE**, in consideration of the foregoing and the mutual covenants contained herein, the Parties agree as follows:

1. **Bankruptcy Court Approval.** This Agreement is subject to Bankruptcy Court approval in Debtor's bankruptcy proceeding upon such notice as may be required pursuant to the Bankruptcy Code and Rules.

2. **Payment.** Trustee shall be entitled to retain the Collected Amount free and clear of any claims by the Debtor or the Van Buskirk Parties. No later than November 14, 2016, Debtor shall pay $540,000 (the "*Additional Cash Payment*") to her legal counsel, Joel Laufer LLC to be held in trust and thereafter delivered to Trustee immediately upon the Order of the Bankruptcy Court approving this Agreement becoming a final order. The Additional Cash Payment is in addition to the Collected Amount.

3. **Income Taxes.** Debtor and the Van Buskirk Parties represent and warrant that they have properly reported on tax returns for periods prior to the Petition Date or will properly

report on their post-petition income tax returns, the Collected Amount and/or the Additional Cash Payment and any tax liability for such amounts has been paid by Debtor and/or the Van Buskirk Parties to the Federal and/or State taxing authorities. Debtor and the Van Buskirk Parties agree to indemnify Trustee for any tax obligation asserted against the bankruptcy estate for Debtor's or the Van Buskirk Parties' failure to properly report such amounts on their Federal and State tax returns.

4. **Property in Safe Deposit Box**. Pursuant to Court Order entered on March 17, 2016, Trustee received turnover of the property listed on **Exhibit A** attached hereto from a safe deposit box (collectively, the "*Safe Deposit Box Property*"). Trustee has deposited the United States Currency ($46,000.00) listed on **Exhibit A** into a bankruptcy estate account and such amount is included in the Collected Amount. Trustee shall retain and have the right to liquidate, subject to further Court approval, any of the remaining Safe Deposit Box Property that has value, as determined in Trustee's sole discretion, and the proceeds therefrom shall be retained by Trustee for the benefit of the bankruptcy estate. When requested, Debtor agrees to provide the income tax basis for the Safe Deposit Box Property.

5. **Release of Debtor and Van Buskirk Parties and Dismissal of Adversary Proceeding with Prejudice.** After notice and upon final Bankruptcy Court approval of this Agreement and receipt of the Additional Cash Payment by Trustee, Trustee on the one hand releases any and all claims the bankruptcy estate has or may have against Debtor, the Van Buskirk Parties and their representatives and assigns, including without limitation, any claims asserted or that could have been asserted in the Adversary Proceeding, any and all claims to the Non-Exempt Assets listed on Debtor's bankruptcy schedules and any claims Trustee or the bankruptcy estate may have against the Debtor and/or the Van Buskirk Parties under 11 U.S.C. §§ 542, 544, 547, 548 and 549, and Debtor and the Van Buskirk Parties on the other hand release any and all claims they have or may have against Trustee, the bankruptcy estate or their representatives and assigns. Upon the releases becoming effective, Trustee shall promptly dismiss the Adversary Proceeding with Prejudice. Nothing in this Paragraph 5 is intended to affect the rights and remedies of the Parties under or for breach of this Agreement, or to release Debtor from her obligation hereunder to timely pay the Additional Cash Payment to Trustee.

6. **Voluntary Agreement.** Each of the Parties hereto agrees, understands, and acknowledges that he, she, or it (a) is not relying upon any inducement or representations made by any other Party except as provided in this Agreement; (b) is not entering into this Agreement under duress, but is doing freely and voluntarily; (c) has sought independent legal counseling respecting his, her, or its legal rights or has waived such rights to legal counseling; (d) is entering into this Agreement with the full knowledge of the consequences thereof; and (e) will perform as required under this Agreement.

7. **No Admissions**. This Agreement is being entered into solely as a settlement of claims or potential claims, and does not represent an admission by any Party hereto of any liability (which liability is specifically denied) with respect to the claims and/or defenses which have been or could have been asserted in the Adversary Proceeding or any other lawsuit or legal proceeding under 11 U.S.C. §§ 542, 544, 547, 548 or 549.

8. **Governing Law and Forum**. This Agreement shall be governed by and construed in accordance with the laws of the state of Colorado, without regard to its internal choice of law rules.

9. **Venue**. A Party seeking to enforce or otherwise litigate any dispute regarding this Agreement may commence such action only in the United States Bankruptcy Court for the District of Colorado.

10. **Expenses.** Except as otherwise expressly provided in this Agreement, each Parties will pay its own expenses incurred in this matter, including the fees of their respective attorneys, accountants and consultants.

11. **Enforcement and Costs**. If any Party brings a claim to enforce, or for breach of, this Agreement, the prevailing Party shall be entitled to its reasonable costs and attorneys' fees.

12. **Paragraph Headings**. The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation thereof.

13. **Counterparts; Fax and Electronic Signatures**. This Agreement may be executed in counterparts. Copies of the Agreement containing signatures that are transmitted by fax or email will be deemed acceptable for purposes of implementation of this Agreement.

14. **Binding Nature**. Upon entry of a final order approving this Agreement, this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

WHEREFORE, the Parties have executed this Agreement as of the date first written above.

_____
Daniel A. Hepner, Chapter 7 Trustee of the
bankruptcy estate of Cathleen Susan Van Buskirk
aka Cathleen S. Van Buskirk

and

_____
Cathleen Susan Van Buskirk aka
Cathleen S. Van Buskirk

and

**SURGICAL CARE, LLC**

By: _____
Name: Cathleen S. Van Buskirk
Title: _____

**Governing Law and Forum.** This Agreement shall be governed by and construed in accordance with the laws of the state of Colorado, without regard to its internal choice of law rules.

**Venue.** A Party seeking to enforce or otherwise litigate any dispute regarding this Agreement may commence such action only in the United States Bankruptcy Court for the District of Colorado.

**Expenses.** Except as otherwise expressly provided in this Agreement, each Parties will pay its own expenses incurred in this matter, including the fees of their respective attorneys, accountants and consultants.

**Enforcement and Costs.** If any Party brings a claim to enforce, or for breach of, this Agreement, the prevailing Party shall be entitled to its reasonable costs and attorneys' fees.

**Paragraph Headings.** The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation thereof.

**Counterparts; Fax and Electronic Signatures.** This Agreement may be executed in counterparts. Copies of the Agreement containing signatures that are transmitted by fax or email will be deemed acceptable for purposes of implementation of this Agreement.

**Binding Nature.** Upon entry of a final order approving this Agreement, this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

**WHEREFORE,** the Parties have executed this Agreement as of the date first written above.

---

Daniel A. Hepner, Chapter 7 Trustee of the
bankruptcy estate of Cathleen Susan Van Buskirk
aka Cathleen S. Van Buskirk

*and*

*/s/ Cathleen S. Van Buskirk*
Cathleen Susan Van Buskirk aka
Cathleen S. Van Buskirk

*and*

**SURGICAL CARE, LLC**

By: */s/ Cathleen S. Van Buskirk*
Name: Cathleen S. Van Buskirk
Title: member

*and*

**ALPINE SPINE CENTER, P.C.**

By: *Cathleen S. Van Buskirk* (signature)
Name: Cathleen S. Van Buskirk
Title: President

*and*

**NEURO LOGICAL, LLC**

By: _____
Name: Cynthia Vanderwerf
Title: _____
Acknowledged and Agreed:
*Cathleen S. Van Buskirk* (signature)
Cathleen S. Van Buskirk

*and*

**GOLDEN VISION, LLC**

By: _____
Name: Cynthia Vanderwerf
Title: _____
Acknowledged and Agreed:
*Cathleen S. Van Buskirk* (signature)
Cathleen S. Van Buskirk

*and*

**CSVB DESIGN, LLC**

By: *Cathleen S. Van Buskirk* (signature)
Name: Cathleen S. Van Buskirk
Title: Member

*and*

**CSVB GROUP, LLC**

By: *Cathleen S. Van Buskirk* (signature)
Name: Cathleen S. Van Buskirk
Title: Member

ALPINE SPINE CENTER, P.C.

By: _____
Name: Cathleen S. Van Buskirk
Title: _____

*and*

**NEURO LOGICAL, LLC**

By: *Cynthia Vanderwerf*
Name: Cynthia Vanderwerf
Title: owner
Acknowledged and Agreed:

_____
Cathleen S. Van Buskirk

*and*

**GOLDEN VISION, LLC**

By: *Cynthia Vanderwerf*
Name: Cynthia Vanderwerf
Title: owner
Acknowledged and Agreed:

_____
Cathleen S. Van Buskirk

*and*

**CSVB DESIGN, LLC**

By: _____
Name: Cathleen S. Van Buskirk
Title: _____

*and*

**CSVB GROUP, LLC**

By: _____
Name: Cathleen S. Van Buskirk
Title: _____

*and*

*[signature: Cynthia Vanderwerf]*
Cynthia Vanderwerf, an individual

*and*

**ALPINE SPINE CENTER P.C. DEFINED BENEFIT PENSION PLAN**

By: _Cathleen S. Van Buskirk_
Name: Cathleen S. Van Buskirk
Title: _President_

*and*

**ALPINE SPINE CENTER P.C. 401(k) PLAN**

By: _Cathleen S. Van Buskirk_
Name: Cathleen S. Van Buskirk
Title: _President_

# EXHIBIT A

# Safe Deposit Box Inventory

| Item | Contents |
|---|---|
| Wells Fargo envelope with circled number 7 | Forty (40) United States one hundred-dollar bills |
| Blank white envelope with circled number 2.5 | Twenty-five (25) United States one-hundred dollar bills |
| Guaranty Bank and Trust Company envelope with circled number 5 | Fifty (50) United States one-hundred dollar bills |
| Wells Fargo envelope with circled number 3 | Thirty (30) United States one-hundred dollar bills |
| Wells Fargo envelope with circled number 5 | Fifty (50) United States one-hundred dollar bills |
| Wells Fargo envelope with circled number 6 | Sixty (60) United States one-hundred dollar bills |
| Guaranty Bank and Trust Company envelope with circled number 3 | Thirty (30) United States one-hundred dollar bills |
| Wells Fargo envelope with circled number 3.5 | Thirty-five (35) United States one-hundred dollar bills |
| Guaranty Bank and Trust Company envelope with circled number 5 | Fifty (50) United States one-hundred dollar bills |
| Key Bank envelope with circled number 3 | Thirty (30) United States one-hundred dollar bills |
| Wells Fargo envelope with circled number 6 | Sixty (60) United States one-hundred dollar bills |
| Boulder Valley Credit Union envelope | Thirty-two (32) 20 pound sterling bills – Bank of England |
| | Nine (9) 50 Euro bills |
| | One (1) Canadian ten dollar bill |
| | One (1) Central Bank of Belize ten dollar bill |
| | One (1) Central Bank of Belize five dollar bill |
| | One (1) 5 pound sterling bill – Bank of England |

# EXHIBIT A

# Safe Deposit Box Inventory

| Item |
|---|
| Black Alexander Wang bag |
| Black Ben Bridge handbag |
| American Institute of Gemological Research, Inc. Appraisal dated May 22, 2013, pertaining to 18KT white gold lady's cast brilliant cut diamond solitaire engagement ring with a pinch shank with a bright polish finish  [Value: $45,731.18] |
| Anspach's Jewelry appraisal dated July 26, 2013, pertaining to one loose 2.10 carat, round, brilliant cut diamond [Value:  $29,500 (insurance); $17,900 (estate)] |
| Anspach's Jewelry job ticket/card, pertaining to 2.09 carat diamond |
| Blue wrapping paper [empty] |
| Gemological Institute of America Diamond Grading Report dated December 11, 2013, pertaining to 2.09 carat diamond |
| Aspach's Jewelry appraisal dated December 16, 2013, pertaining to one loose 2.09 carat, round, brilliant cut diamond [Value:  $33,400 (insurance) $17,900 (estate)] |
| Yellow sticky note pertaining to 2.10 carat diamond |
| Centennial Precious Metals, Inc. Invoice |
| 10 plastic containers (9 sealed and 1 unsealed) each containing 20 1oz fine silver dollars – caps says "Treasury – United States Mint" with emblem |
| 20 British Sovereign King UNC |
| 20 Swiss Franc UNC |
| Diamond Ring |